**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

UNITED STATES OF AMERICA                                                    PLAINTIFF

v.                                           No. 4:07CR00142 JLH

DONALD TAGGART
STEPHANIE TAGGART                                                          DEFENDANTS

**<u>OPINION AND ORDER</u>**

Donald Taggart and Stephanie Taggart, husband and wife, are co-defendants.  The five-count superseding indictment charges in Count 1 that the two of them possessed with intent to distribute more than 50 grams of crack cocaine; in Count 2 that the two of them possessed firearms in furtherance of a drug trafficking crime; in Count 3 that the two of them possessed a stolen firearm; in Count 4 that Donald Taggart was a felon in possession of firearms; and in Count 5 that Stephanie Taggart committed misprision of a felony in that she had knowledge of two felonies without reporting them, *i.e.*, possession with intent to distribute more than 5 grams of crack cocaine, and possession of a firearm by a convicted felon.  Stephanie Taggart has filed a motion to suppress evidence obtained during a search of the Taggart residence and a motion to sever her case from her husband's for trial.  For the reasons stated hereinafter, both motions are denied.

**I.  MOTION TO SUPPRESS**

**A.      The Alleged Failure to Knock and Announce**

Stephanie Taggart first argues that the evidence seized from the residence should be suppressed because the law enforcement officers who executed the search warrant failed to knock and announce their presence before entering.  The United States Supreme Court has held that the failure of law enforcement officers to knock and announce their presence before entering a home to execute a search warrant may render the search and seizure unreasonable under the Fourth

Amendment.  *Wilson v. Arkansas*, 514 U.S. 927, 115 S. Ct. 1914, 131 L. Ed. 2d 976 (1995).  The

Supreme Court has also held, however, that a violation of the knock and announce rule does not

justify suppressing the evidence.  *Hudson v. Michigan*, 547 U.S. 586, 126 S. Ct. 2159, 165 L. Ed.

2d 56 (2006).  Because the exclusionary rule does not apply to violations of the knock and announce

principle, Stephanie Taggart's motion to suppress on that ground is denied without reaching the issue

of whether the officers who searched her residence violated that principle.

**B.**      **Probable Cause to Issue the Search Warrant**

The search warrant was issued by the Honorable Waymond M. Brown, Judge of the District

Court of Jefferson County, Division II.  Judge Brown issued the search warrant based upon an

affidavit submitted by Investigator Lafayette Woods, a deputy sheriff with the Jefferson County,

Arkansas, Sheriff's Office, who was assigned to the Tri-County Drug Task Force.  Woods stated in

his affidavit that, three days before application was made for the search warrant, a confidential

informant made two different controlled buys at 803 East 13th Street in Pine Bluff, Arkansas.

According to the affidavit, the confidential informant purchased marijuana at that residence late in

the afternoon and then returned approximately three hours later and purchased crack cocaine.  Also

according to the affidavit, the confidential informant was searched before each of the controlled

buys, and no money, drugs, or contraband was found.  The confidential informant was provided

money to make the controlled buy, and then Investigator Woods and another officer observed the

confidential informant go into the residence and come out, after which the controlled substance

(marijuana on the first occasion and crack cocaine on the second) was provided to the two officers.

Stephanie Taggart argues that Judge Brown did not have sufficient facts to believe that

probable cause existed to support the search warrant.  She argues that the affidavit provided no

particular facts to show that the confidential informant was reliable, nor was the confidential

informant's information corroborated by someone else.  She also notes that the affidavit provided no video or audio evidence to corroborate the claims of the alleged drug transactions, and she argues that the statements made in the affidavit were merely conclusory.  She further argues that the search of the confidential informant was limited to a pat-down search of outer clothing and did not include undergarments or a search of body cavities, so the affidavit could not and did not rule out the possibility that the confidential informant had the marijuana in the first instance and the crack cocaine in the second instance hidden in undergarments or a body cavity.

"'Probable cause to issue a search-warrant exists when the supporting affidavit sets forth sufficient facts to lead a prudent person to believe that there is a fair probability that contraband or evidence of a crime will be found in a particular place.'"  *United States v. Lakoskey*, 462 F.3d 965, 977 (8th Cir. 2006) (quoting *United States v. Sundby*, 186 F.3d 873, 875 (8th Cir. 1999)).  "A magistrate's determination of probable cause should be paid great deference by reviewing courts." *Illinois v. Gates*, 462 U.S. 213, 236, 103 S. Ct. 2317, 2331, 76 L. Ed. 2d 527 (1983) (internal quotation marks omitted).

Here, Judge Brown had ample facts to lead a prudent person to believe that there was a fair probability that contraband or evidence of a crime would be found at 803 E. 13th Street in Pine Bluff, Arkansas.  The affidavit stated that three days before the application was made for the search warrant a confidential informant had purchased marijuana late in the afternoon and crack cocaine in the evening from that location.  The affidavit established that the confidential informant was searched before each of the controlled buys, and on each occasion was found to be without drugs, money, or contraband before the officers provided money to make the purchases.  The affidavit established that the officers observed the confidential informant approach and enter the residence and then later exit the residence, after which the confidential informant had possession of marijuana

3

in one instance and crack cocaine in the other.  Although it is true that on neither occasion did the officers search the confidential informant's undergarments or body cavities, the law does not require that an affidavit sufficient to support a search warrant based upon controlled buys by a confidential informant exclude all possibility that the confidential informant may have hidden the controlled substance in an undergarment or body cavity.  What is required to support a search warrant is not absolute certainty but a fair probability that contraband or evidence of a crime will be found in the place to be searched.  The affidavit of Investigator Woods was sufficient to lead a prudent person to believe that there was a fair probability that evidence of a crime would be found at 803 E. 13th Street in Pine Bluff, and so Judge Brown was justified in issuing the search warrant.  *Cf. United States v. Rivera*, 410 F.3d 998, 1002 (8th Cir. 2005); *United States v. Pennington*, 287 F.3d 739, 742-43 (8th Cir. 2002); *United States v. Formaro*, 152 F.3d 768, 770 (8th Cir. 1998).

Furthermore, even if probably cause did not exist, the good faith exception would apply here.

Where a search is conducted pursuant to a warrant, the good faith exception to the exclusionary rule applies, and evidence should not be suppressed due to an absence of probable cause unless the warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."

*United States v. Warford*, 439 F.3d 836, 841 (8th Cir. 2006) (quoting *United States v. Leon*, 468 U.S. 897, 923, 104 S. Ct. 3405, 3421, 82 L. Ed. 2d 677 (1984)).

For these reasons, Stephanie Taggart's motion to suppress is denied.

## II.  MOTION TO SEVER

### A.    Evidence of Donald Taggart's Prior Convictions

In support of her motion to sever, Stephanie Taggart first argues that it would be highly prejudicial for her to be tried before the same jury as her co-defendant, Donald Taggart, because he has prior felony drug and weapons convictions the mention of which in front of the jury will

prejudice her.  However, Count 5 charges that she concealed and acquiesced in the possession and concealment of cocaine and a firearm or firearms by a convicted felon, which means that, in a count against Stephanie Taggart, the superseding indictment places in issue the question of whether Donald Taggart had previously been convicted of a felony.

The Eighth Circuit has said, "'a defendant does not suffer any undue prejudice by a joint trial if the evidence is such that one crime would be probative and admissible at the defendant's separate trial of the other crime.'"  *United States v. Boyd*, 180 F.3d 967, 981-82 (8th Cir. 1999).  The Eighth Circuit "has long recognized the existence of a relationship between narcotics dealing and firearms." *Id*. at 982.  Thus, while the Eighth Circuit does not hold that narcotics and weapons charges may always be joined, "when the charges are connected temporally or logically they are reasonably joined."  *Id*.

Here, Count 5, which charges that Stephanie Taggart concealed and acquiesced in the possession of cocaine and a firearm or firearms by a convicted felon, was properly joined with the counts charging that she aided and abetted in the possession with intent to distribute crack cocaine and aided and abetted in the possession of firearms in furtherance of a drug trafficking crime. Because Count 5 charges that Stephanie Taggart committed a misprision of a felony by acquiescing in and concealing the possession of a firearm by a convicted felon, even if the Court were to sever her trial from the trial of Donald Taggart, his prior convictions and her knowledge of his prior convictions would still be at issue in her case, and the jury would still need to be informed that Donald Taggart had been convicted of a felony.  Severing the trials of the co-defendants would not avoid the difficulty that Stephanie Taggart seeks to avoid.

This case is similar to *United States v. Hively*, 437 F.3d 752 (8th Cir. 2006), where one defendant, Wesley Kez, argued that his case should have been severed from that of his law partner,

T. J. Hively, because it would be difficult for the jury to compartmentalize the evidence.  The Eighth

Circuit explained:

> Under Fed. R. Crim. P. 14(a) the issue of severance is entrusted to the "sound discretion of the trial judge."  Where two or more defendants have been charged in the same indictment, there is a preference for a joint trial unless the benefits are outweighed by a clear likelihood of prejudice.  Prejudice can be demonstrated by showing that the jury will be unable to compartmentalize the evidence as it relates to the separate defendants because of a "prejudicial spillover effect."  The burden of showing a clear likelihood of prejudice falls on the party seeking severance.
>
> Trying co-defendants together not only conserves scarce time and resources, but also "gives the jury the best perspective on all of the evidence and therefore increases the likelihood of a correct outcome."  Severance is never warranted simply because the evidence against one defendant is more damaging than that against another, even if the likelihood of the latter's acquittal is thereby decreased.  What is required for a severance is a specific showing that a jury could not reasonably be expected to compartmentalize the evidence.

*Hively*, 437 F.3d at 765 (citations omitted).  "The risk of prejudice posed by joint trials is best cured

by careful and thorough jury instructions."  *Id*. at 766 (quoting *United States v. Mickelson*, 378 F.3d

810, 818 (8th Cir. 2004)); *see also Zafiro v. United States*, 506 U.S. 534, 541, 113 S. Ct. 933, 939,

122 L. Ed. 2d 317 (1993).

It is not clear that the risk of prejudice from joint trials in this case is greater than that

presented in *Hively*, where the Eighth Circuit held that the co-defendants were properly tried

together.  Moreover, the risk of prejudice due to the possibility that the jury may be informed of

Donald Taggart's prior convictions will be present whether or not Donald Taggart and Stephanie

Taggart are tried separately.  The remedy for this risk of prejudice necessarily will lie in the use of

cautionary instructions.

B.      **The Marital Privilege**

Stephanie Taggart also argues that her trial should be severed from that of Donald Taggart because either she or Donald may invoke the marital privilege.  Federal courts recognize two different marital privileges: the marital confidential communications privilege and the adverse spousal testimony privilege.  *United States v. Espino*, 317 F.3d 788, 795 (8th Cir. 2003).

The marital confidential communications privilege applies to communication between spouses, while they are validly married and not permanently separated, made in confidence, meaning that no third person is present and the communicating spouse did not intend for it to be passed on to others.  *United States v. Evans*, 966 F.2d 398, 401 (8th Cir. 1992).  When these three prerequisites are met, a defendant may invoke the privilege to prevent his spouse from testifying as to the content of the protected communication.  *Id*.  The privilege continues even after the marriage has ended.  *Id*. However, the privilege does not apply to confidential communications involving future or ongoing crimes in which the spouses were joint participants at the time of the communications.  *Id*.

The adverse spousal testimony privilege provides that a person may neither be compelled to testify nor foreclosed from testifying against a person to whom he or she is married at the time of trial.  *Espino*, 317 F.3d at 796.  The privilege belongs to the testifying spouse, and the testifying spouse may waive the privilege without the consent of the defendant spouse.  *Id*.

Although Stephanie Taggart says that either she or Donald may invoke the marital privilege, she offers no specific information as to what testimony might implicate the marital privilege, how the interplay between the testimony and the marital privilege would prejudice her in a joint trial with Donald Taggart, or how severing the trials would avoid the prejudice.  She does not say that she could testify as to communications between her and Donald Taggart that would be exculpatory as to her but with respect to which Donald Taggart could claim the marital confidential

7

communications privilege, nor does she say that Donald Taggart might testify as to communications that would be inculpatory as to her but with reference to which she would be able to claim the marital confidential communications privilege.  As to the adverse spousal testimony privilege, that privilege belongs to the testifying spouse, not the defendant spouse.  If Stephanie Taggart were to choose to testify in her own defense, Donald Taggart could not claim the adverse spousal testimony privilege that would prevent her from doing so.  Conversely, if Donald Taggart were to choose to testify in his defense, Stephanie Taggart could not claim that privilege to prevent him from doing so, but the same would be true in a separate trial: if Donald Taggart chose to testify against her, she could not claim the adverse spousal testimony privilege to stop him.  Thus, she has no trial right to prevent Donald Taggart from testifying against her under the adverse spousal testimony privilege.  In short, beyond her assertion that "either party may invoke the marital privilege" Stephanie Taggart offers no specific information, nothing beyond speculation, that would justify severing the trials.

Absent some specific evidence to show that she will be prejudiced by a joint trial with her husband, Stephanie Taggart's argument essentially boils down to the proposition that whenever a husband and wife are indicted as co-defendants their trials should be severed.  The law is to the contrary; the weight of authority permits joint trials of a husband and wife who are co-defendants.  *See United States v. Esch*, 832 F.2d 531, 538 (10th Cir. 1987); *United States v. Vaccaro*, 816 F.2d 443, 450 (9th Cir. 1987); *United States v. Harrelson*, 754 F.2d 1153, 1177-78 (5th Cir. 1985); *United States v. Galvan*, No. 04-CR-00403-LTB, 2006 WL 1659610, at *2-3 (D. Colo. June 8, 2006); *United States v. Burger*, 773 F. Supp. 1430, 1438-39 (D. Kan. 1991); *United States v. Dowdy*, 738 F. Supp. 1283 (W.D. Mo. 1990); *United States v. Freeman*, 694 F. Supp. 190 (E.D. Va. 1988); *United States v. Petty*, 602 F. Supp. 996, 997-98 (D. Wyo. 1984).  Where the government does not introduce the statement of one spouse to incriminate the other, severance is not required.  *United*

*States v. Garrett*, 565 F.2d 1065, 1071 (9th Cir. 1977); *United States v. Figueroa-Paz*, 468 F.2d 1055, 1057 (9th Cir. 1972).  Here, the government has reported that it has no statement from Donald Taggart and, while it has a statement from Stephanie Taggart, it will not introduce that statement in its case in chief.

At this point, the Court has nothing more than the statement that either Donald Taggart or Stephanie Taggart may choose to testify, along with the statement that, if one of them chooses to testify, one or the other of the marital privileges might be implicated.  These unsupported assertions of *may* and *if* are too speculative to support Stephanie Taggart's motion to sever her trial from that of her husband.  The motion to sever is denied.

## CONCLUSION

For the reasons stated above, Stephanie Taggart's motion for severance and motion to suppress are DENIED.  Documents #20 and #22.

IT IS SO ORDERED this 8th day of July, 2008.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE